Kimberly A. Warshawsky (022083)
warshawskyk@ballardspahr.com
Sara V. Ransom (024099)
ransoms@ballardspahr.com
Elizabeth J. Lee (027007)
leee@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:    602.798.5400
Facsimile:    602.798.5595

*Attorneys for Plaintiff American Credit Acceptance, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AMERICAN CREDIT ACCEPTANCE, LLC, | **Case No:** |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | **(Expedited Injunctive Relief Requested)** |
| ZIAPH CAPITAL GROUP INC.; DIMAH AUTO VENTURES INC. d/b/a SIMPLE CAR STORE, INC.; FAIZAAN SHARIF, and HAMID SHARIF, | |
| Defendants. | |

Attorneys for Plaintiff American Credit Acceptance, LLC ("ACA" or "Plaintiff"), alleges the following in support of its Verified Complaint against Defendants Ziaph Capital Group Inc. ("Ziaph"), Dimah Auto Ventures Inc. d/b/a Simple Car Store, Inc. ("Dimah"), Faizaan Sharif ("Faizaan Sharif"), and Hamid Sharif ("Hamid Sharif") (Defendants Dimah, Faizaan and Hamid are collectively referred to as "Guarantors" and, with Ziaph, are collectively referred to as "Defendants"):

**I.    PARTIES**

1.    ACA is engaged in the business of commercial lending.

2.    ACA is a South Carolina limited liability company with its principal place of business in Spartanburg, South Carolina.

3.    ACA has the following members with the following citizenships:

- George D. Johnson, Jr. Revocable Trust is a citizen of South Carolina.

- George D. Johnson, III ESA Trust is a citizen of South Carolina.

- Susanna P. Johnson ESA Trust is a citizen of South Carolina.

- Dan C. Breeden, Jr. is a citizen of South Carolina.

- Myrtle Avenue Investments, LLC is a citizen of South Carolina.

- Corry W. Oakes Revocable Trust is a citizen of South Carolina.

- Saybrook Investments, LLC is a citizen of South Carolina.

- Jaimeco, LLC is a citizen of South Carolina.

- Mike Russ is a citizen of Georgia.

- Curt Sidden is a citizen of South Carolina.

- MNL Investments, LLC is a citizen of South Carolina.

- Elder Domaine, LLC is a citizen of Illinois.

4.      Defendant Ziaph is an Arizona corporation with its registered office address and principal place of business at 1701 W. Broadway Boulevard, Mesa, Arizona 85202.

5.      Defendant Dimah is a New Mexico corporation with its registered office address and principal place of business at 169 Griegos NW, Albuquerque, New Mexico 87107.

6.      Dimah is doing business in Arizona by the name of "Simple Car Store". Simple Car Store is registered with the Arizona Secretary of State and lists its address as 320 South Alma School Road, Mesa, Arizona 85210.

7.      Defendant Hamid Sharif is a citizen of Arizona.   Upon information and belief, Hamid Sharif resides at 7811 North via De La Montana, Scottsdale, Arizona 85258.

8.      Defendant Faizaan Sharif is a citizen of Arizona.   Upon information and belief, Faizaan Sharif resides at 8833 Wethersfield Road, Scottsdale, Arizona 85260.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

## II.    JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff ACA and each of its members are diverse from all Defendants in this litigation and the amount in controversy exceeds $75,000.

10.    This controversy stems from a breach of contract by Defendants which includes, among other things, a loan Plaintiff made to Ziaph for $7,481,797.31.  Thus, the amount in controversy exceeds $75,000 and satisfies the jurisdictional requirement of 28 U.S.C. § 1332.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district.

## III.    GENERAL ALLEGATIONS

12.    Defendant Dimah operates a used car sales lot that offers "buy here, pay here" automobile sales, selling vehicles to consumers who finance their vehicles on-site through Dimah.  The loans are then transferred to Ziaph, a related entity, which finances and manages the consumer loans.   In return for these loans, the customers grant a lien to Dimah, and thus, Ziaph, on the purchased automobiles.

13.    The consumer loan transactions are memorialized in written contracts between Dimah and the consumer called a retail installment sales contract ("RISC").

### A.    ACA Enters Into a Funding Agreement, Guaranty, and Note with Defendants.

14.    On April 26, 2012, ACA and Defendants entered into a Funding Agreement (the "Funding Agreement") whereby Ziaph was authorized to borrow up to $7.5 million from ACA for use in financing RISCs with consumer borrowers for automobile purchases (the "Loan").  A true and correct copy of the executed Funding Agreement is attached hereto as Exhibit 1.

15.    The parties have entered into several amendments to the Funding Agreement, including the First Amendment on October 31, 2012, Second Amendment on May 1, 2013, Third Amendment on August 1, 2013, Fourth Amendment on September

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

17, 2013, and Fifth Amendment on October 7, 2013.  The Amendments are attached hereto as Exhibits 2 through 6.

16.    As of the date of this Complaint, Defendants have borrowed $7,481,797.31 of the $7.5 million authorized under the Funding Agreement and its Amendments.

17.    In addition to the Funding Agreement, Defendants executed a Promissory Note (the "Note"), also dated April 26, 2012, in which they promise to repay the Loan and make certain other pay-downs as periodically required.  *See* Funding Agreement at Exhibit B, attached hereto as Exhibit 1.

18.    Defendant Ziaph is the principal borrower on the loan, and Dimah, Faizaan Sharif and Hamid Sharif each absolutely and unconditionally, jointly and severally executed a guaranty of repayment of the Loan (the "Guaranty").  *See* Funding Agreement, at Sections 12.01-02 & 12.09.

19.    Pursuant to the Funding Agreement, Defendants were obligated to make certain timely deposits under the Loan.  *See* Funding Agreement at §§ 1.01 "Payment Date" and 2.07, attached hereto as Exhibit 1; *and see* the Note, in the Funding Agreement at Exhibit B, attached hereto as Exhibit 1.

20.    ACA additionally—through the Funding Agreement—requires Defendants to prepare, maintain, back-up, and, upon reasonable request of ACA, provide the daily and monthly transaction reports related to the Collateral (defined below), including each RISC.  *See* Funding Agreement at §§5.01(o) and (x), 5.03(h), 6.01(d), (f), and (p), 6.03(d), (i)-(k), and (m)-(n), 7.02(b), (j) and (l), 7.05), attached hereto as Exhibit 1; *and see* Fifth Amendment at § 1(a), attached hereto as Exhibit 6.

21.    According to the Funding Agreement, Defendant Ziaph represented and warranted that "[a]ll Monthly Reports, Daily Reconciliation Reports, information, exhibits, financial statements, documents, books, records or reports furnished or to be furnished by the Servicer to the Lender in connection with this Agreement are accurate, true, complete and correct." *See* Funding Agreement § 5.03(h), attached hereto as Exhibit 1.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

22.    The Funding Agreement provides that failure to comply with any of these conditions constitutes a "termination event," at which time all loans and obligations may be accelerated and become immediately due and payable.  *See* Funding Agreement at Sections 9.01(a)(v), (vii) and (b), attached hereto as Exhibit 1.

**B.    ACA Has a Perfected Security Interest in Certain Collateral to Protect Its Investment.**

23.    The collateral for the Loan included, but was not limited to, the automobiles financed by the Loan, the RISC agreements related to these automobiles, and all of the related payments collected on receivables which are to be deposited  in bank accounts in which ACA holds a secured interest (collectively, the "Collateral").  *See* Funding Agreement at § 3.01, attached hereto as Exhibit 1.

24.    As per the recorded UCC Financing Statement, ACA also holds a perfected security interest in, among other things, Ziaph's (a) receivables, and related contracts, (b) financed vehicles, including those that have been repossessed, (c) account collateral, (d) rights to the collection account, (e) receivable files, servicer files, schedule of receivables, and all records, documents and writings evidencing or related to receivables or contracts, and (f) deposit accounts.  ACA's UCC-1 was properly perfected via a recording with the Arizona Secretary of State on September 14, 2012.  A true and correct copy of the recorded UCC-1 Financing Statement is attached hereto as Exhibit 7.

25.    ACA continues to own and hold the Note and Funding Agreement (including Guarantee).

**C.    ACA Discovers Disturbing Accounting Abnormalities in Ziaph's Consumer Loans and, Meanwhile, Ziaph Begins Submitting Insufficiently Funded Checks to ACA.**

26.    In April 2014, ACA discovered a number of accounting discrepancies in the monthly reports provided by Ziaph.  Indeed, several hundred accounts upon which ACA has a security interest, displayed abnormalities.

27.    These accounts revealed that hundreds of consumer borrowers' due dates for loan payments had been pushed forward without explanation.  Over the course of six

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

months, payments were represented to be made on these accounts, but the reductions to the principal balance were extraordinarily low.  *See* Accounting Spreadsheet of Abnormal Accounts, attached hereto as Exhibit 8.

28.     A summary of the abnormal loans is represented in a spreadsheet, attached hereto as Exhibit 8.  Column G represents the principal reductions (or lack thereof) from October 2013 through March 2014 on the abnormal loans.  Column H indicates the number of days that each account's payment due date changed without explanation.  The only reason for a due date to change is when a borrower makes a payment.  *See* Accounting Spreadsheet of Abnormal Accounts, attached hereto as Exhibit 8.

29.     Tab 2 on the spreadsheet, indicates those loans for which a principal reduction of less than $500.00 was present—which raised red flags because, with these types of loans, after the first couple of months the principal should reduce much more quickly.  *See* Accounting Spreadsheet of Abnormal Accounts, attached hereto as Exhibit 8.

30.     These abnormalities alerted ACA's accounting team to a potential problem. The abnormalities signify that either (a) these loans have gone into default and ACA was not provided notice, and meanwhile, ACA's Collateral is dissipating, or (b) consumer borrowers are making payments, but Ziaph is not properly applying them to reduce the principal.

31.     By either of these scenarios, ACA's relationship with the consumer borrowers (as the successor servicer under Section 8.01 of the Funding Agreement) is threatened.  Ziaph's misapplication of consumer payments to loans creates distrust with customers and exposes ACA to potential claims for violations of federal and state consumer protection statutes.  *See* Funding Agreement, attached hereto as Exhibit 1.

**D.     Ziaph Refuses to Provide an Explanation for the Accounting Abnormalities and Blocks ACA's Auditors' Access to Ziaph's Records.**

32.     Upon recognizing these accounting abnormalities, on April 11, 2014, ACA contacted Defendants and requested additional information.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

33.    Defendants responded that they could not accommodate this request.

34.    ACA requested that Defendants allow ACA to access the Dealer Management System ("DMS"), which would include payment history by account and show how each consumer borrower's payments had been applied.  ACA is entitled to access DMS under the Funding Agreement and UCC-1 Financing Statement. *See* UCC-1 Financing Statement, attached hereto as Exhibit 7; *see also*, Funding Agreement, attached hereto as Exhibit 1.

35.    Defendants indicated that the only computer to which Ziaph had granted remote access to ACA, the "war room computer," was stolen.  *See* e-mail from Farah Sharif dated April 11, 2014, attached hereto as Exhibit 9.

36.    Ziaph has other computers with the DMS system on them, but Defendants would not provide an explanation, or allow ACA to review the records to make its own determination about the hundreds of abnormal accounts that ACA had identified.

37.    ACA next sent a sample list of a few abnormal accounts and requested information from Defendants.  Defendants again refused to explain the abnormalities and stated that ACA could send its auditors to review the records.

38.    On Wednesday, April 16, 2014, at Defendants' suggestion, ACA sent its auditors to Phoenix to review Defendants' DMS system.

39.    When the ACA auditors arrived at Defendants' place of business, however, Defendants refused them entrance.  ACA's auditors have still not been granted access to Defendants' records.

40.    Because Defendants have denied ACA its contractual right to review these records, ACA does not know the full extent of damage to its Collateral or to the consumer borrowers who have loans with Defendants.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

**E.    Ziaph Submits Numerous Bad Checks to ACA, Raising Additional Concerns About Ziaph's Accounting and Mishandling of Consumer Loans.**

41.    Also in April 2014 Defendants submitted a number of checks for payment to ACA's collection account that were rejected for insufficient funds.  *See* Copies of Ziaph's Dishonored Checks, attached hereto as Exhibits 10 through 18.

42.    As of the filing of this Complaint, Defendants have not remitted checks with adequate funds to cure these breaches.[1]

43.    The failure to cure the insufficiently funded checks constitutes a payment default under the Note, and an Event of Termination under the Funding Agreement.  *See* Funding Agreement at § 9.01(a)(v), attached hereto as Exhibit 1.

44.    Based solely on the information available to date, the sections of the Funding Agreement Defendants have breached include, but are not limited to: §§ 2.07(b), 2.10(a); 5.01(o) and (y); 5.03(h) and (j); 5.06; 6.01(c), (f), (g), (h) and (l)(vii); 6.02(j); 6.03(f), (g), (i) and (j); 6.04(e) and (i), 6.05 (a) and (b), 7.02(a), (c)(iv) and (l), 7.05(a) and (b), and 7.12 (a)-(f) and (h) and 9.01(a)(iii)-(vii) and (xxxii).  *See* Funding Agreement, attached hereto as Exhibit 1.

45.    Based on the accounting abnormalities and representations by Defendants, and the insufficiently funded checks, ACA is concerned that Defendants are making improper payments to ACA on defaulted consumer RISCs to avoid their obligation to refund ACA for defaulted loans and repossessed vehicles.  *See* Funding Agreement § 5.06, attached hereto as Exhibit 1.  Ziaph also covenanted to cause Dimah to perform in accordance with the contract.  *See* Funding Agreement § 6.01, attached hereto as Exhibit 1.

46.    ACA is also concerned that Defendants have and are mishandling ACA's Collateral in the vehicles financed by ACA that remain in Defendants' possession.

---

[1] ACA expects that it will seek to amend this Complaint to include additional claims for drawing checks on insufficient accounts with intent to defraud.  ACA has provided notice and a cure period in accordance with the Arizona statute, A.R.S. § 12-671.  Plaintiff had to file this Complaint and request for a temporary restraining order immediately, however, due to the urgent nature and irreparable and ongoing injuries to ACA and consumer borrowers.

47.    In addition, consumer borrowers are vulnerable to Defendants' mishandling of accounts.  Based on the limited information available to ACA without access to records, it appears that, in spite of continued payments, some of the consumer borrowers' loans have had little to no principal reduction despite months of alleged payments.

48.    Defendants currently hold 1,333 automobile loan accounts under the Funding Agreement.  Of these, even without the benefit of an audit or the ability to review the accounts, ACA has identified 721 accounts with suspicious activity.

49.    At a minimum, Defendants have defaulted on the Note, and breached the Funding Agreement by failing to make timely payments and refusing ACA access to the records as required under the Funding Agreement.  In addition, the Guarantors, who are obligated to perform where Ziaph fails, have defaulted on their Guarantee.

50.    These defaults remain uncured despite ACA having voluntarily provided Defendants with notice and opportunity to cure.

51.    ACA's Collateral remains in Defendants' exclusive control and possession.

52.    ACA is concerned that Defendants, whose misconduct has now come to light, will dispose of the Collateral for their own benefit.

53.    All conditions precedent to ACA's enforcement of its rights under the Note and Funding Agreement have been met.

**COUNT ONE**

**(Breach of Contract)**

54.    ACA incorporates all paragraphs of this Complaint as though fully set forth herein.

55.    As described above, Defendants' on-going actions breach the Funding Agreement (including the Guarantee) and relevant Amendments, and the Note.

56.    ACA and Defendants are parties to valid and binding contracts in the form of the Funding Agreement (including the Guaranty), Amendments, and Note.

57.    Defendants have breached the terms of the Funding Agreement (including the Guarantee), Amendments, and Note by refusing to make timely payments and

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

refusing to prepare, maintain, back-up, and, upon reasonable request of ACA, provide daily and monthly transaction reports.

58.    Upon information and belief, Defendants have breached the Funding Agreement at §§ 2.10; 5.01(o) and (y); 5.03(h) and (j); 5.06; 6.01(c), (f), (g), (h) and (l)(vii); 6.02(j); 6.03(f), (g), (i) and (j); 6.04(e) and (i), 6.05 (a) and (b), 7.02(a), (c)(iv), (l), 7.05(a) and (b), and 7.12 (a)-(f) and (h). 9.01(a)(iii)-(vii) and (xxxii).

59.    ACA has been injured and has suffered damages as a result of these breaches.

60.    ACA is also suffering ongoing, irreparable, nonmonetary harm as a result of Defendants' conduct.

61.    ACA has filed, contemporaneously with this Complaint, an Application for Temporary Restraining Order or, in the alternative, Preliminary Injunction.

62.    ACA is likely to prevail on its claims for breach of the Funding Agreement (including Guarantee) and Note.

63.    In the Funding Agreement, Defendants represented, warranted and covenanted to prepare, maintain, back-up, and, upon reasonable request of ACA, provide accurate daily and monthly transaction reports related to the Collateral, including each RISC.  Defendants refused to satisfy this obligation.

64.    ACA has reason to believe that Defendants are dissipating its secured Collateral and ACA is suffering irreparable harm as a result.

65.    Defendants are in exclusive control of ACA's Collateral, including but not limited to, records and vehicles.

66.    Until ACA is afforded its lawful opportunity to review Defendants' records, ACA's Collateral is at continued risk to decrease or disappear.

67.    Moreover, Defendants' mismanagement of consumer loans puts unsuspecting consumer borrowers at risk for irreparable harm.

68.    This harm not only affects individual consumers who have loans with Ziaph, but it also affects ACA as the successor servicer of those loans.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

69.     Defendants' conduct is inflicting irreparable and ongoing harm on ACA's relationship with the consumer borrowers.     Because of Defendants' account mismanagement, ACA will likely need to take over Ziaph accounts as successor servicer. Thus, Defendants' mismanagement of consumer loans exposes ACA to potential claims for violations of various state and federal consumer protection laws.

70.     Only when ACA has access to Defendants' records can ACA reconcile the accounting discrepancies to protect consumer borrowers, protect its relationship with consumer borrowers, protect itself from liability caused by Defendants' mishandling of consumer loans, and locate and protect its Collateral.

71.     Without a temporary restraining order or preliminary injunction, ACA's irreparable harm will continue during the pendency of this litigation, especially in the coming days and weeks.

72.     The balance of harm strongly favors ACA, as ACA merely seeks access to the information it is owed and the Collateral it was promised.

73.     Defendants will suffer no cognizable harm if the temporary restraining order or injunction is granted.   Should this Court grant ACA's requested relief, the only impact on Defendants will be that they must fulfill their promises in the Funding Agreement, Note and Guaranties by (a) sharing the information they already promised to share, and (b) prohibiting Defendants from improperly disposing of ACA's Collateral.

74.     Equity and public policy strongly favor the granting of an injunction. Consumer borrowers are implicated in Defendants' mishandling of accounts, vehicles and contracts.   By granting a Temporary Restraining Order or, in the alternative, a Preliminary Injunction, this Court will not only enable ACA to protect its Collateral and relationships with consumer borrowers, but it will also enable ACA to protect unwitting consumer borrowers from mistreatment.

75.     In requesting this temporary restraining order and preliminary injunction, ACA merely requests that the Court require Defendants to fulfill a pre-existing legal

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

obligation and, in so doing, enable ACA to ensure the protection of consumer borrowers and ACA's Collateral.

**COUNT TWO**

**(Guaranty)**

76.     ACA incorporates all paragraphs of this Complaint as though fully set forth herein.

77.     The Guaranty signed by Faizaan Sharif, Hamid Sharif, and Dimah is valid and enforceable under the laws of Arizona.

78.     As described above, a number of breaches have occurred under the Funding Agreement, including the Guarantee, Amendments and Note, several of which include termination events under § 9.01.

79.     These breaches have triggered Faizaan Sharif, Hamid Sharif, and Dimah's liability under the terms of the Guaranty.

80.     ACA is entitled to recover all amounts it is due, as defined by the terms of the Guaranty.

**COUNT THREE**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

81.     ACA incorporates all paragraphs of this Complaint as though fully set forth herein.

82.     ACA and the Defendants are parties to valid and binding contracts, including the Funding Agreement and Amendments, and the Note.

83.     Arizona recognizes, implied in every contract, a covenant of good faith and fair dealing.

84.     Defendants have a duty to deal fairly with ACA under all contracts entered into with ACA.

85.     As described above, Defendants breached the implied covenant of good faith and fair dealing by depriving ACA of benefits it reasonably anticipated to obtain from the Funding Agreement.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

86.    ACA has been injured and has suffered damages as a result of Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief in its favor and against Defendants:

A.    For an Order, consistent with the Application for Temporary Restraining Order, or, alternatively, a Preliminary Injunction (filed contemporaneously herewith), temporarily or preliminarily enjoining Defendants from taking any further action with respect to ACA's Collateral and assets of ACA that are presently in Defendants' possession or under their control, indicating in writing, the location of ACA's Collateral and permitting ACA access thereto, in particular granting ACA access to Defendants' place of business or, alternatively, to Defendants' electronic records, for the purpose of examining Defendants' books and records and evaluating the condition of ACA's Collateral and assets and consumer borrower accounts;

B.    For actual, compensatory and consequential damages in an amount to be determined at trial;

C.    For judgment against Hamid Shariff and Faizaan Shariff in favor of Plaintiff in an amount to be determined at trial;

D.    For an award of all other amounts owed by Hamid Sharif, Faizaan Sharif and Dimah under the Guarantee, to be proven at trial;

E.    For pre and post-judgment interest at the maximum rate permitted until paid;

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

F.    For attorneys' fees and costs, pursuant to the Funding Agreement, Section 13.08 or, alternatively, pursuant to A.R.S. § 12-341 and 341.01; and

G.    For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 28th day of April, 2014.

**BALLARD SPAHR LLP**

By:    Sara V. Ransom
Kimberly A. Warshawsky
Sara V. Ransom
Elizabeth J. Lee
1 East Washington Street, Suite 2300
Phoenix, Arizona  85004-2555
Attorneys for Plaintiff

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on the 28th day of April, 2014, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing.

3

4

5

/s/     Tanya M. Ferreira

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400

V E R I F I C A T I O N

STATE OF <u>South Carolina</u>       )
                               ) ss.
COUNTY OF <u>Spartanburg</u>       )

       I, <u>STEVEN MEYER</u>, am the <u>DIRECTOR OF CREDIT</u> for Plaintiff American Credit Acceptance, LLC ("Plaintiff"), the named Plaintiff in the action, and am authorized to make this Verification on its behalf. I have read Plaintiff's Verified Complaint, and the matters set forth therein and Exhibits attached thereto are true and correct to the best of my knowledge, except for those matters stated on information and belief, and as to those matters, I believe them to be true.

       I declare under penalty of perjury that the foregoing is true and correct.

       EXECUTED THIS <u>25TH</u> day of April, 2014.

                     _____
                     Steven Meyer, American Credit Acceptance LLC